This time we'll hear Meijer Tool v. NLRB. Good morning, judges. I'm Dan Rosenthal. I represent Meijer Tool. Your Honors, last month the Labor Board acknowledged that it had gone off the rails in protected, concerted cases. That case is Allstate Maintenance 367 NLRB No. 68, January 11, 2019. The board in Allstate said it, quote, articulated the standard more than three decades ago in the Meijer Industries cases. But even though the Meijer's decisions have never been overruled, subsequent decisions, according to the board, have deviated from Meijer's and have blurred the distinction between protected group action and unprotected individual action. The board said our decision today begins the process of restoring the Meijer's standard and going back to the congressional intent to limit the protection afforded under the act, one, to concerted activity, and two, for the purpose of mutual aid or protection. Both must be proved. Well, isn't there evidence in this case that there was broader agitation beyond Mr. Kenanell dealing with this new supervisor who had been brought on and feeling that he was inadequate and difficult and impossible? Didn't they go together to the human resources facility to complain about that? Judge, yes, there was protected concerted activity, we acknowledge, on the night of May 25th. But... What about the following day? Well, when they came together, that would have been protected concerted activity in the abstract. But, Judge, the board has always taken the position in this case that the pivotal act was HR Generalist Dena Adams calling the police, and all that's relevant here is what happened in Dena Adams' office the next day to cause that to occur. Here's what occurred and here's what didn't occur. One employee, Bauer, came in and complained only about the go-to guy. Ten minutes later, another employee, Poff, came in and complained only about the rivalry between day and night shifts. Then ten minutes later, still, Kenanell came in. And here's what happened, and this is quoting Kenanell. In your meeting with Adams, you never complained to her about the go-to stuff, true? No, I never raised it. Kenanell admits he was uninterested in what the other two, Poff and Bauer, had to say. His testimony, I wasn't personally trying to eavesdrop or listen in, so all I heard was talking. I listened to nothing in particular. Kenanell expressed to Dena Adams his own personal gripes and nothing else. He griped about a claimed physical assault by McGuire and a claimed racial slur by McGuire. Did he have a complaint previously or did he argue the previous day with one of the supervisors about the attitude that they were taking towards the night shift? Yes, Judge, and Dena Adams knew nothing about that and he raised . . . She didn't know about that from any of the three? She did not know about that from any of the three. There's no evidence in the record to suggest that she did. And here, going on, A. L. J. Gollin asked him, Kenanell, so with regard to Mr. McGuire and his statements and conduct, your view was that was directed just to you, his statements and that conduct that followed the meeting? Kenanell, correct. Kenanell admitted, quote, I only talked about myself. That couldn't be further from concerted action intended to induce group action. Now, are you saying that the authorities that talk about activities which are a logical outgrowth of the concerted action are no longer good law? Judge, the arising out of authorities are completely inconsistent with Myers and with this court's Ontario knife decision, a seminal decision in this, which was followed in Myers 1 and 2, and which the board in the new all-state maintenance case has said is and always should be the law. What is the status of Atlantic Steel now? And the other side relies on that. Judge, we don't get properly to Atlantic Steel if there was no protected concerted activity, if there was not concerted activity. Well, you've already talked about concerted activity, some concerted activity the previous day, and also the fact that you've accepted concerted activity when they went to the H.R. office together to file complaints. At that point, you're saying that the activity fragmented after that, but there is some concerted activity from which there could be an outgrowth. Judge, there could only be an outgrowth if Dena Adams, who was the actor who called the police, remember general counsel in an objection said the unlawful conduct is calling the police. That could only arise logically out of the protected concerted activity if she knew about it and acted on it, and the evidence is she didn't. If those cases were valid, then Ontario Knife, which is still good law and controlling in this circuit, would not be good law. In Ontario Knife, two employees complained about having to do machete work, and they said they weren't going to do it anymore, and their boss said, if the work schedule says, and excuse my language, you're going to kiss my ass, you will do that. One of them walked out, and the board said, as it did here, that that was a logical outgrowth, and this court in Ontario Knife said, no, it's not. That was not protected concerted activity. That case is the flip side of this coin and is indistinguishable, in essence, from this case. So, Judge, we've got Cannell and Adams going back and forth about two gripes, personal gripes only. She says, I'm going to count to three. She says, one. He says, two, three. He smirks. Voices are raised. She says, leave my office and the premises. He refuses. She calls the receptionist to call the police. What prompted the call to the police, and this is unrebutted in the record, judges, was Cannell's refusal to obey her lawful order to leave. Board member Emanuel described this as serious insubordination. The board . . . Not just not to leave her office. He was standing outside the office at that point, wasn't he? He was standing in the doorway is the unrebutted evidence. She said, leave my office. She said, I'm going to have to call the police. She counted one. He says, two, three. He smirks. She says, leave the premises. Then she changed it to leave the premises? That's right. At that point, he did leave the office, right, after the counting? Yes. He went into the HR hallway, Judge. Now, my . . . She told him to leave the premises. Yes. Or she called the police because he failed to leave the premises. He went to the lobby and waited downstairs, right? Yes. Didn't leave the premises? That's right, Judge. Meyer Toole called the police, and they discharged Cannell for his refusal to leave the office, and for no other reason. First of all . . . Well, once she says she's calling the police, surely it's proper for him to stay on the premises. I'm not following you, Judge. Well . . . If she says . . . It's like the scene of the accident. If somebody says, I'm calling the police, you don't get in your car and drive away. Cannell admits that that was trespassory, and beyond that, Judge, the alleged unlawful act, calling the police, cannot, as a matter of law, be an unfair labor practice, according to the D.C. Circuit and the Nora Pennington Doctrine. That's the Venetian case. I guess your point here was that she could have . . . Okay, so you're not making . . . was warranted any police action. Just being in the office. His refusal to leave the office. But he did leave the office. On the count of three, he stepped out of the office. Judge, he was still standing in her doorway where she could see him, and none of that matters, because her actions were not based on, conceivably, anything protected and concerted. They were based on his personal gripe that he was only making for himself. And that can't be distinguished, Your Honors, from this Court's decision in Ontario Knife. If there's a rebuttal, we'll hear you then. May it please the Court, my name is Rebecca Johnston, and I represent the National Labor Relations Board. Jumping first to the question of whether Mr. Cannonell was engaged in protected-concerted activity on May 26, my opposing counsel focuses on Cannonell's testimony adhering to the exclusion of all the record evidence. As this Court has said, whether an employee is engaged in protected-concerted activity is a factual question, and we examine the totality of the circumstances. If you look at the circumstances here, he was in . . . He's also quoting the human rights person, the person who called the police. Which testimony? Human resources. He's also quoting her as to what happened and who said what, and back and forth. Well, the administrative law judge did not credit her for what happened in the office. He credited Mr. Cannonell and some of the other employees who testified. And she did, in fact, say that she thought that the three were in her office filing complaints that day. From her perspective, the employer is hard-pressed to argue that . . . Did your adversary misquote Mr. Cannonell's testimony? No, Your Honor, but just the fact that he says he was only talking about himself doesn't mean that the activity was not concerted. In fact, Mr. Poff . . . What was the exact concerted activity? The concerted activity was going into human resources to file a complaint about what happened at the meeting the night before. He and his co-workers had discussed after the meeting that they didn't like the way management reacted when they raised concerns at that meeting. And Poff even told him, if you're not going to raise this issue, I'm going to raise it for you. But she wasn't dismissing calling the police because they did that. She was calling the police because of conduct intertwined with his protected concerted activity, and that's why this is an Atlantic Steel case. Atlantic Steel allows an employee some leeway for engaging in impulsive conduct while engaging in protected concerted activity. So he was in her office filing a complaint. She was dismissive, and he reacted in a way that . . . And what was the complaint that he was there filing? His written complaint, he was talking about the go-to guy and also the reaction of management when he raised issues at the meeting the night before. Management got in his face and accused him of not doing his job, did not provide him with any proof. And when he got into Ms. Adams' office that day, he raised those complaints, and he talked about . . . He asked her, who holds the vice president accountable? He and Poff talked about this incident where this man was in his face. Although Poff disagreed that it was a physical assault, they did discuss that it was a verbal assault. So Poff is readily participating in Mr. Cannonell's relaying what happened the night before and his complaint. And moreover, before Mr. Cannonell came in the office that day, Mr. Poff had raised concerns about how the night shift was treated and specifically how Mr. Cannonell was treated. Although Mr. Poff thought they were acting biased based on what shift employees worked, Mr. Cannonell had a different take. He thought they were biased based on racial issues. But the board's definition of concerted activity is not so narrow that they can't diverge a little bit based on their learned experience. My opposing counsel mentions this new all-state decision. I don't believe they filed a 28-J letter, and the reason we didn't is because that decision does not affect the holding in this case. That decision is fairly narrow and overrules precedent that says just because someone is in a group and complaining, they are automatically acting concertedly. The board here did not rely on that precedent, and in fact, it looked at the totality of the circumstances, and all-state just simply doesn't apply to the facts of this case. Opposing counsel also talks about this Noor-Pennington doctrine and that a call to the police can never be an unfair labor practice. That is not the law. Under Section 8A.1, an employer violates the act when they interfere with, restrain, or coerce employees in their exercise of Section 7 rights. I can't think of something much more coercive than threatening to call the police or calling the police. And to the extent they rely on this Noor-Pennington doctrine, they did not raise this before the board. So the board did not have an opportunity to consider it, and this court therefore lacks jurisdiction to consider it under Section 10E of the Act. And I'd just like to emphasize that Atlantic Steel is the appropriate test here. They characterize this as an insubordinate, trespassory refusal to leave, but it was just happened in a matter of minutes. Mr. Cannonell was asked to leave her office. He did leave her office, but then he persisted in trying to file his complaint and asking what he had done wrong. Myrtle's own investigative committee found that Ms. Adams had escalated the situation, and again, it was over in a matter of minutes. So if anything, his intemperate conduct was intertwined with his protected concerted activity and was not so egregious as to cost him the protection of the Act. If this court doesn't have any further questions, we rest on our briefs and ask that you enforce the board's order in full. Thank you. Judges, the ALJ found that Adams then told Cannonell to leave her office, and he said he took a step back into the hallway but was still visible from inside the office. Judge . . . Well, if he was visible from inside the office, then that doesn't mean he was in the office. It could mean he was outside the office, which is, in fact, where he was. He was on the threshold, Judge, but, again, it doesn't matter because there was no protected concerted activity. What . . . That's the issue. Yes. Judge, the counsel for the Labor Board told you what she wishes the record said, not what it did say. She said that he complained to Adams about the go-to stuff. Quote, In your meeting with Adams, you never complained to her about the go-to stuff. True. No, I never raised it. He has admitted, and the record is unrebutted, that the . . . What about the complaint itself? Didn't the complaint itself have something to . . . say something about that, having to listen to the go-to guy? Judge, the record is unrebutted that Dena Adams never read the complaint. No one thinks that she did at the time that she made her pivotal call to the receptionist. But doesn't that bear on the question of whether he was engaged in concerted action? Judge, it can't happen . . . What's in the complaint? It can't happen . . . Judge, it can't happen in the abstract. The general counsel . . . Why is it abstract? He filed a complaint. It's in the abstract because the general counsel said that the act complained of was calling the police. Dena Adams called the police. You can only look at what Dena Adams was presented with, and it's unrebutted, Judge, that she was presented with two very personal claims. We can't look at the fact, according to your view. We can't look at the three complaints. We can't look at the prior incident. We can't compare the complaints to what happened the day before. It's all to decide whether there's concerted action. We have to somehow filter it through what was in her mind. No, Judge, you don't have to do that at all. You have to look at his admitted conduct because that's all that is pertinent here. And the board in the new Allstate case said for employees to enjoy the protection of the act, two elements must be satisfied. The activity must be concerted, and it must be engaged in for the purposes of mutual aid or protection. And all he did in her office, all she knew, was that he made two very personal gripes, neither of which call for mutual aid or protection. Judges, just as in Allstate, where the board said, we reaffirm the standards articulated in Myers 1 and 2, under which individual griping does not qualify as concerted activity because it's carried out in the presence of other employees. Judges, consistent with Ontario Knife, consistent with the admitted facts in this record, the unrebutted record, our petition for review, I respectfully submit, must be granted and the board's decision reversed. Thank you. Thank you both.